```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

_____

UNITED STATES OF AMERICA,
           Plaintiff,

                                    Criminal Action
    vs                                 No. 20-7-6

TAMMIE BROLIN,
           Defendant.

_____

      Transcript of Detention Hearing proceedings held on June 17, 2020, United States District Court, Johnstown, Pennsylvania, before the Honorable Keith A. Pesto, U.S. District Court Magistrate Judge.


APPEARANCES:

For the Government:         MAUREEN SHEEHAN-BALCHON, Esq.
                                     U.S. Attorney's Office
                                     319 Washington Street
                                     Johnstown, PA  15901
                                     Balchon@usdoj.gov

For the Defendant:           MARTIN A. DIETZ, Esq.
                                     2885 Wildwood Road Extension
                                     Allison Park, PA  15101
                                     mdietzesquire@gmail.com



Court Reporter:     Shirley Hall, RDR, CRR
                      U.S. Courthouse, Suite 204
                      208 Penn Traffic Building
                      319 Washington Street
                      Johnstown, PA  15901
                      shirleyhall_uscra@yahoo.com

Proceedings recorded by digital stenography; transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2             (In open court and via Zoom.)
 3             THE COURT:  All right, so we're almost all here; we're
 4   just waiting for the Government to come over.
 5             MR. DIETZ:  Tammie, can you hear me?
 6             THE DEFENDANT:  Yes, sir.
 7             MR. DIETZ:  I'm Marty.
 8             THE DEFENDANT:  Hi, Marty.
 9             MR. DIETZ:  It's Marty that you've talked to on the
10   phone.
11             THE DEFENDANT:  That's the face; okay.
12             THE COURT:  While we're waiting for the Government to
13   show up, do you two want to spend like five minutes in a
14   break-out session, if there's anything to go over?
15             MR. DIETZ:  We spoke extensively yesterday.  I think
16   we're in pretty good shape.
17             THE COURT:  All right.  Well, as soon as the
18   Government shows up, we'll get started.
19             MR. DIETZ:  Thank you.
20          (Off the record discussion.)
21             THE COURT:  Everybody's here.
22             MS. SHEEHAN-BALCHON:  Oh, good.
23             THE COURT:  All right.  The Government is here in
24   the -- in chambers with me.
25             Shirley, your microphone is muted; I don't know if you
```

1  can hear me.
2          MRS. HALL, COURT REPORTER:  I can hear you.
3          THE COURT:  Obviously you can hear me, okay.  All
4  right, then we're ready to go on the record, thanks.
5          We have everyone here in court for the 1:00 p.m.
6  proceeding in the United States versus Tammie Brolin,
7  20-7-Criminal.  I'm here in Johnstown.  It's 1:00 on Wednesday
8  afternoon, June 17th, 2020.  The Government is present with me,
9  represented by Attorney Sheehan-Balchon.  Attorney Dietz
10 appears by Zoom and Ms. Brolin appears by Zoom from the Cambria
11 County Prison as well.
12         The Pretrial Services is represented by Agent Bossart,
13 and I think that's -- yes, that's everyone at this point.  My
14 courtroom deputy is hosting the matter.
15         First order of business, Attorney Dietz, is it -- just
16 to put it on record, is it okay with you that we proceed via
17 Zoom in this matter rather than re-scheduling it to some future
18 date when we can all appear live?
19         MR. DIETZ:  Yes, Your Honor; on behalf of Miss Brolin
20 we both consent to that.
21         THE COURT:  Great.  The first order of court business,
22 then, is the arraignment, so let me grab my forms.  Have you
23 had enough time to go over the -- you mentioned that you had
24 spoken extensively with your client.  Have you had enough time
25 to prepare for purposes of entering a plea today?

1   MR. DIETZ: Oh, absolutely, Your Honor. And on behalf
2  of Miss Brolin, she pleads not guilty.
3   THE COURT: Very well. And I presume you want a trial
4  by jury?
5   MR. DIETZ: Yes, and we waive reading of the
6  indictment as well.
7   THE COURT: Thank you; that would be a lengthy
8  process.
9   The Rule 16 conferences have not been held in these
10 matters; and so, needless to say, discovery is not completed.
11  The matter has not yet been scheduled for trial, and I
12 won't even ask for an estimate until we are farther along as to
13 how long a trial might be.
14  Let's turn to the question of release versus
15 detention. The -- both of counsel -- I presume,
16 Attorney Dietz, you've received a copy of the recommendation of
17 Pretrial Services.
18  MR. DIETZ: I have, Your Honor; and I would ask that
19 the Pretrial Services report be incorporated herein.
20  THE COURT: Is the Government proposing or -- does the
21 Government object to the Pretrial Services report
22 recommendation?
23  MS. SHEEHAN-BALCHON: Your Honor, we're still seeking
24 detention despite the Pretrial Services report.
25  THE COURT: Okay. Do either of you have any evidence

1  to proffer or present?
2            MS. SHEEHAN-BALCHON:  Your Honor, this is a
3  presumption to detain case.
4            THE COURT:  Right.
5            MS. SHEEHAN-BALCHON:  So I believe it's the defense's
6  burden.
7            THE COURT:  Right.  Well, I typically have treated a
8  Pretrial Services evaluation as rebutting that presumption.  If
9  there's any further evidence, I'll hear it.  But if on the one
10 hand we have a presumption and on the other hand I have a
11 recommendation, I have traditionally gone with the
12 recommendation.
13           Is there anything unusual about the circumstances of
14 this case?  I know in general terms what the case is about.
15 But is there anything that's not covered by the Pretrial
16 Services report that you think is important to know?
17           MS. SHEEHAN-BALCHON:  Yes, Your Honor.  I do have a
18 proffer as to offense conduct.
19           THE COURT:  Okay.
20           MS. SHEEHAN-BALCHON:  If Mr. Dietz has no further
21 witnesses, I am ready to present that proffer.
22           MR. DIETZ:  Well, Judge, I would adopt essentially
23 what the Court just said.  Miss Brolin was interviewed by
24 Pretrial Services.  They prepared a report.  So as I indicated,
25 I would just adopt and incorporate the information contained in

1  that report; and at this juncture we don't have any additional
2  witnesses to present.
3              THE COURT: Okay. All right. Well, then -- we've had
4  several matters already today. And in some of them the
5  Government presents their proffer as to offense conduct. I'll
6  go ahead and I'll hear that at this time.
7              MS. SHEEHAN-BALCHON: Thank you, Your Honor.
8              As far as the offense conduct in this case,
9  Your Honor, this Defendant is charged in Count 2 of the
10 indictment, which is a conspiracy to distribute and/or possess
11 with intent to distribute kilogram quantities of
12 methamphetamine.
13             Miss Brolin and her husband, Alexis Brolin, were two
14 of the initial targets of this longterm investigation.
15 Miss Brolin participated in undercover sales to -- I'm sorry,
16 controlled purchases by an undercover officer from their
17 residence leading up to what turned out to be a lengthy wiretap
18 investigation. She was intercepted speaking with her husband,
19 Alexis Brolin.
20             During the course of the investigation, she assisted
21 Alexis Brolin in every manner. She actively sold
22 methamphetamine. She actively collected drug proceeds. As I
23 mentioned, she sold it directly to an undercover officer. She
24 made repeated trips with Mr. Brolin to Erie to meet with
25 John Bisbee, the primary Defendant in this case, to pick up

1    kilogram quantities of methamphetamine, returned to the
2    Clearfield area, and they were distributed there.
3              A few interceptions, Your Honor, were quite
4    enlightening as to Miss Brolin's participation in this
5    organization.  There was a phone call intercepted between she
6    and her husband on January 2nd of this year wherein he is in
7    Erie waiting for his kilogram weight supplies of
8    methamphetamine, and she actively scolds him, instructing him
9    that she has been in this business much longer than him, that
10   she knows more people than him, she told him to go to Erie to
11   meet with the big guy, presumably Bisbee, and she blamed him
12   for bringing law enforcement attention into their home.
13             The second prong, the weight of the evidence against
14   Miss Brolin in this case, Your Honor, the Government has
15   wiretap interceptions of her participating in this large-scale
16   organization, physical surveillance, video surveillance for
17   months at her residence that she shared with Alexis Brolin.
18             The third prong, the history and characteristics of
19   this Defendant, Your Honor, throughout the course of this
20   investigation neither she nor Alexis Brolin were employed other
21   than to sell methamphetamine.
22             Her criminal history, which is detailed in the
23   Pretrial Services report, that -- by summary, she's been
24   arrested 13 times.  She's been convicted 11 times, including
25   two DUIs and a prior drug distribution charge, which is a

1  felony.  Most importantly for the Court's consideration, on ten
2  occasions a warrant was issued for her failure to appear, her
3  failure to comply with a court order or court sentence.  There
4  is currently an active detainer or bench warrant lodged against
5  her in Docket No. 401 of 2016 out of Clearfield County, which I
6  believe is mentioned in the Pretrial Services report.
7           Your Honor, the other prong as to her characteristics,
8  the Government would proffer that she, in fact, based upon her
9  methamphetamine trafficking, is a danger to the community; but
10 she's also a clear and present danger within her own home.
11 During the course of this investigation there was a search
12 warrant executed at her residence on April 4th of this year.
13 She was present, two other co-conspirators were present,
14 Nicole Gaines and Andrew Knepp and they were there waiting for
15 Alexis Brolin to return with pounds of methamphetamine to be
16 redistributed.
17          He was intercepted by police.  They seized two pounds
18 of methamphetamine.  He obviously was unable to return to that
19 residence.  Law enforcement officers executed the search
20 warrant then.  Also present in plain view on the kitchen table
21 was a loaded firearm that this Defendant had ready access to.
22 The course of the search warrant revealed that at least nine
23 other firearms were seized.
24          There were two minors in the residence including her
25 stepdaughter.  Upon the State Police's further investigation,

1  they learned that the stepdaughter, who is a minor, was the
2  subject of CYS intervention and had tested positive for drugs
3  that CYS believed had been supplied by Tammie Brolin to the
4  child while the child resided in that residence.
5         That child has been removed -- had been removed since
6  April 4th of 2020.  The State Police have learned that despite
7  the court order for the placement of the child outside that
8  home, that the child had returned to that residence on numerous
9  occasions before the arrest of the Brolins on June 9th.
10        THE COURT:  How old is that child?
11        MS. SHEEHAN-BALCHON:  Approximately fifteen at this
12 time, Your Honor; 14 or 13 when the investigation started.
13        THE DEFENDANT:  May I say something?
14        MR. DIETZ:  No; no, definitely not, Tammie.
15        THE DEFENDANT:  Okay.
16        MR. DIETZ:  Judge, I may be able to -- I may be able
17 to resolve this matter quickly.  I wasn't aware that the bench
18 warrant was still in effect.  If the bench warrant is still in
19 effect, I'd ask for a moment or two to speak with Miss Brolin
20 because if there's a bench warrant out there for her right now,
21 there's no reason for her to litigate detention at this point.
22        THE COURT:  Agreed.
23        I'll ask my courtroom deputy, are you able to send the
24 two of them to a breakout room for three minutes, five
25 minutes -- how long would you like?

```
1            MR. DIETZ:  Two to three minutes, Judge.
2            THE COURT:  Okay, all right.  My courtroom deputy
3   can -- the two of you should disappear, and we should disappear
4   from your screen for about three minutes.  When you come back,
5   we can pick up.
6            MR. DIETZ:  Thank you.
7       (Brief pause in proceedings.)
8            THE COURT:  All right.  Miss Brolin just left, so I
9   think you're going to be next, Attorney Dietz.
10      (Off the record discussion.)
11      (Attorney Dietz and the Defendant go into a breakout room.)
12      (Off the record discussion.)
13      (Attorney Dietz and the Defendant return to the hearing.)
14           THE COURT:  They're both back.  Okay.
15           All right, everybody's back.  It's about three minutes
16  later.  The Government had not yet finished with its proffer;
17  but, Attorney Dietz, you had remarked that the existence of a
18  detainer was pretty much going to render any decision I might
19  make moot.
20           Is it your understanding that there is a detainer and
21  that this matter is really premature?
22           MR. DIETZ:  It is, Your Honor.  And I spoke with
23  Miss Brolin about that.  At this point -- and I apologize for
24  it happening during the middle of the hearing, Your Honor --
25  but we are going to waive the detention hearing at this point.
```

1   And after we investigate and see if we can get this detainer
2   lifted, we may revisit the issue.
3           THE COURT:  Sure, there's no reason to burn your
4   bridge or use your best opportunity at a detention hearing if
5   it's going to be a moot point.
6           All right, then I'll go ahead and discontinue the
7   detention hearing.  I won't enter an order.  I'll just remark
8   that we're in adjournment until such time as we find out that
9   the detainer has been lifted.
10          That being the case, is there anything else that
11  either counsel need to put on the record?  I know,
12  Attorney Sheehan-Balchon, you have some remarks about the
13  Speedy Trial Act.
14          MS. SHEEHAN-BALCHON:  I do, Your Honor.
15          Just so the record is clear, the Government
16  understands and accepts that we have three days to schedule a
17  detention hearing.  I would like to remark for the record that
18  good cause has been shown for this hearing to get scheduled
19  outside that time period.  I spoke with Mr. Dietz last week and
20  this day was convenient for him.
21          In addition, Your Honor, with the COVID restrictions,
22  the administrative orders by Judge Hornak, in addition to the
23  complexity of this case with 38 Defendants, Pretrial Services
24  being inundated with all of these Defendants and attempting to
25  get Pretrial Services reports finished; in addition, it has

1  taken the Federal Public Defender's office quite some time to
2  find representation for everybody.  That's not the case with
3  Miss Brolin; however, there are some Defendants who are still
4  incarcerated who do not have representation yet.
5          So I just wanted to note for the record that we
6  believe good cause has been shown to hold this hearing outside
7  the three days.
8          Lastly, the Government was prepared to begin making
9  Rule 16 disclosures early next week.  However, a few defense
10 attorneys -- not Mr. Dietz -- have filed objections to the
11 Government's protective order.  So until that's resolved, we
12 cannot begin disclosures.
13         THE COURT:  Very well.  Thank you.
14         Attorney Dietz, anything you wish to place on record?
15         MR. DIETZ:  No, not at this time, Your Honor.  Thank
16 you.
17         THE COURT:  All right.
18         Well, then, Miss Brolin, we may see you soon or not so
19 soon, depending on how long it takes to get this bench warrant
20 handled.  In the meantime --
21         THE DEFENDANT:  Okay, thank you.
22         THE COURT:  -- please remember my advice to you.
23 Attorney Dietz is the only person in the world, your family and
24 friends included, that you can talk to in safety.  And I
25 know --

1   THE DEFENDANT:  Okay.
2   THE COURT:  -- that, you know, sometimes you just want
3   to say something to make people understand.  Refrain from doing
4   that; talk to your attorney first.  All right --
5   THE DEFENDANT:  Okay.  Thank you.
6   THE COURT:  All right, with that understood, we're in
7   recess.  Thank you all.
8   MR. DIETZ:  Thank you, Your Honor.
9   MS. SHEEHAN-BALCHON:  Thank you, Your Honor.
10   (Hearing concluded at 1:20 p.m.)
11                       C E R T I F I C A T E
12   I, Shirley Ann Hall, certify that the foregoing is a correct
13   transcript for the record of proceedings in the above-titled
14   matter.
15
16
17                              s/Shirley Ann Hall
                                Shirley Ann Hall, RDR, CRR
18                              Official Court Reporter
19
20                              * * * * *
21
22
23
24
25