IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                )
                                         )
                v.                       )
                                         )
TAMMIE BROLIN                            )          Criminal No. 20-07
                                         )
                Defendant.               )

<u>MEMORANDUM IN AID OF SENTENCING</u>

AND NOW comes Defendant, Tammie Brolin, by and through her attorney, Martin A. Dietz, Esquire, and respectfully files the following Memorandum in Aid of Sentencing on the following basis:

Defendant, Tammie Brolin (hereinafter "Ms. Brolin"), incorporates the facts set forth in the Presentence Investigation Report. Additionally, Ms. Brolin asks the Court to consider the information and arguments contained herein and impose the mandatory minimum ten-year prison sentence in this case.

Furthering the trend started by the United States Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court restored the tremendous discretion that sentencing courts possessed prior to the promulgation of the sentencing guidelines. <u>Gall v. United States</u>, 522 U.S. 38, 128 S.Ct.586 (2007). Largely as a result of the Supreme Court's pronouncements in <u>Gall</u> and <u>Kimbrough v. United States,</u> 522 U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." <u>United States v. Moon</u>, 513 F.3d 527, 544 (6th Cir. 2008), quoting <u>Gall</u>, 128 S.Ct. at 602. District courts

are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines and, importantly, sentencing courts are not required to even presume that the guidelines provide an appropriate sentence in a given case.

In United States v. Gunter, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted Booker to require a district court to comply with the following three steps:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the Third Circuit's pre-Booker caselaw, which continues to have advisory force; and
>
> (3) Finally, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence.

See also Tomko, 562 F.3d at 567; United States v. Levinson, 543 F.3d 190, 194-195 (3rd Cir. 2008); United States v. Charles, 467 F.3d 828, 830-31 (3rd Cir. 2006); United States v. Jackson, 467 F.3d 834, 837 (3rd Cir. 2006).

These three factors, while not identical, are consistent with the considerations enunciated in Gall and continue to guide sentencing courts within the Third Circuit.  United States v. Smalley, 517 F.3d at 215; United States v. Wise,  517 F.3d at 216.

Notwithstanding the decreased rigidity of the sentencing guidelines, the first step in determining a federal defendant's sentence requires a sentencing court to consider the federal sentencing guidelines because, in fact, they are a product of Congressional action.  United States v. Langford, 516 F.3d 205, 214 (3rd Cir. 2008) citing United States v. Goff, 501 F.3d 250, 257 (3rd Cir. 2007); Cooper, supra.   A sentencing court's failure to correctly calculate the correct guideline range "thwarts" reasonableness review and taints the remaining sentencing analysis. United States v. Ali, 516 F.3d 205, 214 (3rd Cir. 2008).   A sentencing court must correctly calculate the correct offense level, criminal history category, enhancements and sentencing range. Langford, 516 F.3d at 213.

After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guideline range.  See United States v. Vampire Nation, 451 F.3d 189, 195 (3rd Cir. 2006)(A departure is based on the sentencing guidelines. A variance is based on consideration of the §3553(a) factors).  See also Gunter, 462 F.3d at 247, n. 10.   As set forth in United States vs. Fumo,  655 F.3d 288, 317 (3rd Cir. 2011):

> There are "two types of sentences that diverge from the original Guidelines range . . . . A traditional sentencing 'departure' diverges . . . from the originally calculated range 'for reasons contemplated by the Guidelines themselves.' In contrast, a 'variance' diverges . . . from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." United States v. Floyd, 499 F.3d 308, 311 (3d Cir. 2007) (internal citations omitted). This distinction is more than mere formality. "Although a departure or a variance could, in the end, lead to the same outcome . . . it is important for sentencing courts

3

to distinguish between the two, as departures are subject to different requirements than variances." Id. "[D]istrict courts should be careful to articulate whether a sentence is a departure or a variance from an advisory Guidelines range." United States v. Vampire Nation, 451 F.3d 189, 198 (3d Cir. 2006).

As explained by the Third Circuit Court of Appeals in United States v. Grier:

[u]nder an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error. **The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range, but must impose a sentence based on all the factors articulated in §3553(a)**. The court of appeals must then decide whether that final sentence is 'reasonable' (emphasis supplied).

475 F.3d at 561.


Although the Gall decision did not expand on the nature of the required § 3553(a) consideration, the Third Circuit has expressed what it deems necessary. The Third Circuit requires that the record "demonstrate the trial court gave "meaningful consideration" to the §3553(a) factors." See United States v. Vargas, 477 F.3d 94, 101-102 (3rd Cir. 2006); United States v. Manzella, 475 F.3d 152 (3rd Cir. 2007); United States v. Parker, 462 F.3d 273, 276 (3rd Circuit 2006), citing Cooper, 437 F.3d at 329, n3. A district court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing", however, the record must reflect that the district court considered the § 3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." Id. A trial court should not sway from imposing its independent judgment in such

considerations and great deference is given to the trial court "because it is in the best position to tailor a sentence to a particular defendant and his offense." Vargas, 477 F.3d at 101 citing Cooper at 329-332; see also Jackson, 467 F.3d at 841; United States v. Lloyd, 469 F.3d 319, 323 (3rd Cir. 2006); United States v. Dragon, 471 F.3d 501 (3rd Cir. 2006).

"Meaningful consideration" includes addressing the arguments of the parties which have legal merit and correctly calculating the appropriate guideline range. Cooper, 437 F.3d at 329. A sentencing court "need not discuss every argument made by a litigant if an argument is clearly without merit." Cooper, 437 F.3d at 329.  "Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing. Cooper, 437 F.3d at 329.  A sentencing court must, however, address a defendant's colorable arguments concerning specific facts germane to this third step analysis.  United States v. Sevilla, 541 F.3d 226, 232 (3rd Cir. 2008).

Moreover, after consideration of the relevant factors, a sentencing court can vary (i.e., a "variance") from the advisory guidelines range. Gunter, 462 F.3d at 247, n. 10.   In Gall, the Court's decision categorically rejected an "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guideline range". 128 S.Ct. at 595; see also Levinson, 543 F.3d at 196.   Rather than requiring extraordinary circumstances to justify a deviation from the guidelines, the Court explained that a district judge must explain his or her reasons for a variance in a particular case with sufficient justifications.  Id.  As set forth in Levinson:

> While the Guidelines are no longer mandatory, <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005), and no "extraordinary circumstances" are needed to justify a sentence that varies from the recommended results, <u>Gall</u>, 128 S.Ct. at 595, and while there is no mathematical formula for determining whether a district court's justifications for a variance are sufficient, <u>id</u>. at 594-95, we nonetheless must be satisfied that, broadly speaking, an adequate justification is provided on the record.

543 F.3d at 196.      As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, a reviewing court must affirm. <u>United States v. Jones</u>,   566 F.3d 353, 366 (3rd Cir. 2009) citing <u>Wise</u>, 515 F.3d at 218.  Where a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." <u>Tomko</u>, 563 F.3d at 56, citing <u>Gall</u>, 128 S.Ct. at 597.

According to <u>Gall</u>, <u>Booker</u> and its related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. §3553(a) factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –
    (A) To reflect the seriousness of the offense, to promote respect for the law, and to
        provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical
        care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant
        as set forth in the guidelines –

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 944(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing commission into amendments issued under diction 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", as set forth above.    This directive, commonly called "sentencing parsimony" is defined as the least restrictive sentence necessary to achieve the purposes of sentencing.   United States v. Dragon, 471 F.3d 501, 503 (3rd Cir. 2006);  See also Kimbrough, 128 S.Ct. at 575-576 (a district court's judgment that a particular defendant's sentence was sufficient but not greater than necessary is entitled to great weight, even if the district court's judgment is based in part of its disagreement with the policies behind an applicable guideline).   Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of

imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is ***not*** an appropriate means of promoting correction and rehabilitation" (emphasis added); see also <u>United States v. Manzella</u>, 475 F.3d 152 (3ʳᵈ Cir. 2007) (It is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation. Instead, that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment).

## NATURE AND CIRCUMSTANCES OF THE OFFENSE AND<br>HISTORY AND CHARACTERISTICS OF THE DEFENDANT

"[S]entencing courts have historically been afforded wide latitude in considering a defendant's background at sentencing". <u>United States v. Berry</u>, 553 F.3d 273, 279 (3ʳᵈ cir. 2009) citing <u>United States v. Paulino</u>, 996 F.2d 1541, 1547 (3rd Cir. 1993).  Under 18 U.S.C. §3661, "***no limitation*** shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  As a practical matter, this statutory language trumps the now-advisory policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence and virtually any other facts that fit within the ambit of §3553(a).

As set forth above, the Court is virtually without limit in considering information while fashioning an appropriate sentence.  See 18 U.S.C. §3661; 18 U.S.C. §§3553(a)(1).   While the offense of conviction is certainly serious and nothing contained herein is intended to minimize the seriousness of Ms. Brolin's crimes, Ms. Brolin believes that there are notable facts and circumstances about her important to sentencing.

Ms. Brolin first asks this Court that her upbringing was rather sad and she did not benefit from a stable, loving family.   Her parents were both alcoholics who did not raise heer in a conventional family setting.  Due to her lack of parental guidance, Ms. Brolin was essentially raised by her grandmother.   By the age of 17, she was living alone with a fiancé.  By the age of 18, she had her first child and then had seven more children with various other paramours over the course of the next 14 years.   She has been married to five different men and is currently married to Alexis Brolin, one of her co-defendants.   Ms. Brolin has suffered from breast cancer and is currently in remission.   She currently takes various medications for a number of conditions, including mental health issues, that are more specifically discussed in the Presentence Investigation Report.

Ms. Brolin also requests this Court to consider that the circumstances of her pretrial incarceration during the COVID-19 pandemic have been far restrictive than they otherwise would have been had she been incarcerated during a time when there was no such pandemic. The punitive aspects of his pretrial detention were severe.  During the height of the pandemic, Ms. Brolin had been on consistent lockdowns while incarcerated and she was denied the ability to have personal meetings with family members or friends.  Movement within the prison was restricted and she was restricted to one hour of recreation per day and some days she did not

have any opportunity for recreation. Incarcerated defendants are at a much greater risk to contract COVID-19 and the ability to quarantine is compromised in such a setting. She was fortunate to shower a few times per week instead of daily.  She asks the Court to consider that the conditions of his pretrial incarceration were much more restrictive than they otherwise would have been.

## THE NEED FOR THE SENTENCE IMPOSED

### A.    To Reflect the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense

A ten-year prison sentence is substantial.  Under the facts of this case, such a sentence will reflect the seriousness of Ms. Brolin's offense, promote respect for the law and provide just punishment for his crime.

### B.    To Afford Adequate Deterrence To Others From Committing Similar Conduct

Under this prong of Section 3553(a), courts assess whether a sentence will provide sufficient specific deterrence to the defendant from committing future crimes, and general deterrence to the public, deterring others from committing similar offenses.    Ms. Brolin has been thoroughly deterred by the consequences she has already experienced, including the tremendous humiliation and shame he has brought onto himself and his family.  Under 18 U.S.C. §3582, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of

promoting correction and rehabilitation" (emphasis added); see also United States v. Manzella, 475 F.3d 152 (3rd Cir. 2007) (It is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation. Instead, that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment). Ms. Brolin' arrest, the upheaval of her family's life and the fact that she is facing a mandatory minimum sentence of ten years' imprisonment has deeply affected her and serves as a severe deterrent. Her life has been changed forever. She is not eligible for a number of federal benefits and her status as a federal felon will remain with her for the rest of her life.

### C.    To Protect the Public from Further Crimes of the Defendant

While recidivism is an important factor for a sentencing judge to consider, Ms. Brolin poses little further threat to the community. *See* Pepper, 131 S.Ct. 1229 (finding the likelihood that the defendant will engage in future criminal conduct is a factor that sentencing courts must consider in imposing sentence). Ms. Brolin will be serving a substantial prison sentence in this case and she will be in her mid-60's when she is released. A ten-year prison sentence and a term of supervised release is sufficient to ensure that the public will be protected from further crimes of Ms. Brolin

## TYPES OF AVAILABLE SENTENCES

By statute, a court must consider the kinds of sentences available in this case.   As set forth below, this Court must impose, at a minimum, a ten-year sentence of imprisonment in this case.

## THE SENTENCING GUIDELINES CALCULATION

This Court is also to consider the sentencing guidelines as a starting point in fashioning an appropriate sentence.  Ms. Brolin acknowledges that the advisory sentencing guideline range is 108-135 months' imprisonment.  However, because a mandatory minimum sentence of 120 is applicable to Ms. Brolin, the guideline range becomes 120 – 135 months.

## ANY APPLICABLE POLICY STATEMENTS FROM THE
## UNITED STATESSENTENING GUIDELINES

Ms. Brolin asserts that there are no applicable policy statements germane to his case.

## THE NEED TO PROVIDE EDUCATIONAL OR VOCATIONAL TRAINING,
## MEDICAL CARE OR CORRECTIONAL TREATMENT

Based on the foregoing, providing Ms. Brolin with needed educational or vocational training, medical care or other correctional treatment while legitimate considerations, are not issues which warrant a custodial sentence in this case.   See 18 U.S.C. §§3553(a)(2)(D). However, based on Ms. Brolin's history, as set forth in the Presentence Investigation Report, she

requests the Court to recommend her participation in the Bureau of Prison's 500-hour Residential Drug and Alcohol Program.


**THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUITY OF SIMILAR CRIMES**


An additional concern of the federal statutory scheme is the need to avoid unwarranted sentencing disparities among defendants with similar criminal histories who have been convicted of similar conduct.    18 U.S.C. §3553(a)(6).    This concern may also include the consideration of unwarranted similarities among defendants who are not similarly situated.  See Gall, 552 U.S. at 56. (Sentencing court "also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated.)   Additionally, and important to this case, a defendant's sentence will not automatically be deemed substantively unreasonable if it is more lenient than a sentence imposed on similarly situated co-defendants. "Although courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), a '[d]isparity of sentence between co-defendants does not of itself show an abuse of discretion,'" United States v. Hilliard, 726 Fed.Appx. 918 (3$^d$ Cir. 2018) citing United States v. Cifuentes, 863 F.2d 1149, 1156 n.5 (3d Cir. 1988).  Under the facts of this case, this factor is not particularly relevant.

## **THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE**

Restitution is not an issue in this case.

## **CONCLUSION**

Ms. Brolin respectfully requests that this Court consider the comments herein and impose a

sentence of 120 months' imprisonment and no fine.

Respectfully submitted,

   s/ Martin A. Dietz            .
Martin A. Dietz, Esquire
Pa. I.D. No. 69182
2885 Wildwood Road Extension
Allison Park, PA 15101
(412) 261-5520

Attorney for Defendant,
Tammie Brolin